AMBROSE CRAM, Respondent, v. THE UNION BANK OF ROCH-
ESTER, Appellant.

SALE. PARTNERSHIP. RIGHTS AND LIABILITIES OF VENDEE. ASSIGN-
MENT FOR BENEFIT OF CREDITORS. PAROL EVIDENCE. QUESTION OF
LAW.

Under a sale of the entire undivided interest of the vendor, in a certain
partnership and the property thereof, in terms embracing, besides enu-
merated articles, " all other property and valuable thing or things belong-
ing to said firm, of every kind and nature;" the balance of a bank
account to the credit of the said firm, but unknown to all of the parties
at the time of the sale and transfer, is to be regarded as among the prop-
erties subject to such sale and transfer, and the vendee succeeds to the
rights therein of the vendor.

A subsequent assignment by the firm, of which the vendee, by virtue of his
purchase and agreement, becomes a member, for the benefit of creditors,
passes to the assignee such bank account, though without knowledge of
such account by the parties; and the assignee may maintain an action
against the bank to recover the balance standing to the credit of the firm.

Parol proof of an inventory of the assets of the firm made at the time of
the sale by one partner of his interest in the partnership and property is
inadmissible to vary or restrict the general operation of the written
agreement.

The written agreement between the parties having expressed a conveyance
of all the interest of the retiring member, there is no question of fact to
be submitted to a jury as to what the parties intended to convey, and
no parol proof upon that point is admissible; what was the property
belonging to the firm and conveyed by the agreement is a question of
law for the court.

DICTUM. The vendee having agreed to assume the vendor's proportion of
all the existing debts of the firm, his liability cannot be limited to an
amount merely supposed, at the time, to embrace all of such debts, but
is determined by the actual indebtedness, be the same more or less than
what is understood to be the amount of such debts.

PRIOR to the month of September, 1859, the firm of Roach
& Mattison carried on the tin, copper and sheet iron business,
at the city of Rochester. On the 6th day of September,
1859, Mattison sold out all his interest in the copartnership
property to Calvin Whaples, by an instrument which trans-
ferred all his interest in the property and effects of the firm,
"that is to say, the one undivided half of all and singular
the said goods, working tools, notes and bills receivable, and
all other property or valuable thing or things belonging to

said firm, of every name and kind." The assignment was subject to the payment of one-half of the firm debts, which Whaples then expressly agreed to pay.

Whaples immediately entered into copartnership with Roach, taking the place of Mattison in the firm. Whaples & Roach continued the business until January, 1860, when they failed, and made a general assignment to the plaintiff of all the copartnership property. At the time of the sale to Whaples, Roach & Mattison had an account with the defendant, and there was a balance owing them of $165. None of the parties were aware of this balance until the spring of 1862, when the plaintiff ascertained the fact and demanded payment. The bank refused, claiming that it did not belong to the plaintiff. On the trial, it was shown that an inventory, in writing, was made at the time of the sale to Whaples. The defendant offered to prove the contents of the inventory by parol. The court excluded the testimony. The defendant then offered to prove, by parol, that the sale was made with reference to the inventory, and that the inventory was supposed to contain all the property sold. This proof was rejected.

The defendant then offered to show, by parol, that Mattison did not intend the sale to Whaples to transfer the money in Union Bank. This testimony was excluded.

At the close of the testimony, the counsel for the defendant requested the court to nonsuit the plaintiff, upon the grounds, "first, that the money or credit in controversy did not pass to Whaples or to the plaintiff; second, that it was not intended to, and, therefore, did not, do so; third, that the plaintiff had failed to establish any right or title thereto." The motion was denied, and the defendant excepted.

The counsel for the defendant then requested the court to submit each of the following questions to the jury: First, whether it was the intention of Mattison and Whaples, in the sale by the former to the latter, to transfer the fund or credit in question to Whaples. Second, whether the sale, as made, was not by the mutual mistake of these parties, arising from their ignorance of its existence and other circumstances.

The court declined, and the defendant excepted. The jury found a verdict for the plaintiff by the direction of the court. The General Term affirmed the rulings below and judgment was entered for the plaintiff, from which the defendant now appeals to this court.

*Edward Harris*, for the appellant.

I. The plaintiff showed no title to the money in question, and the motion for a nonsuit should have been granted upon that ground.

The plaintiff, as assignee of Whaples & Roach, acquired title to their copartnership property only. Such is the statement in the case.

Assuming that the bill of sale from Mattison to Whaples was broad enough to cover the money in question, yet it is quite evident that Whaples never allowed this money to pass to the firm of Whaples & Roach; he knew nothing of it; nor did Roach, and there is nothing in the articles of copartnership between Whaples & Roach to indicate any intention on the part of either of the partners to transfer the money in question to the firm of Whaples & Roach. There is no language used broad enough to include that money, unless it is by the use of the word "accounts;" but as language is to be understood in its ordinary meaning, it is submitted that the parties, by the use of the word "accounts," meant the amounts due from persons who had dealt with the firm upon credit. Neither is there any thing in the partnership articles to indicate what should be the capital of the firm of Whaples & Roach. They merely agreed to continue the business of the old firm of Mattison & Roach, nor was there any language used by which it can be said that Whaples agreed to put the money in question into the firm. We must therefore look to what the partners actually did, in order to ascertain what was the capital of the firm of Whaples & Roach.

Whaples, before buying, caused an inventory to be taken. That inventory did not embrace the money in question, and it was the property embraced in the inventory that he

actually put into the firm of Whaples & Roach, as partner-ship property.

II. If it should be held that it was not error to refuse a nonsuit, then it should have been submitted to the jury to say, as a question of fact, whether or not it was the intention of the parties, that the firm of Whaples & Roach should acquire the title to the money in question.

We say that that question should have been submitted to the jury, because it is quite evident, from the evidence, that the sale by Mattison to Whaples, and the formation of the partnership between Whaples & Roach, were one transac-tion, and in that case the bill of sale and partnership articles should be read as one instrument (2 Denio, 130), and looked upon as one transaction. There can be no doubt but that Whaples understood that he was to acquire title only to such property as was actually put into the firm of Whaples & Roach. At all events, the bill of sale and articles of copart-nership must be read in the light of surrounding circum-stances, and when so read, it cannot be said that the meaning of the parties is so clearly expressed in the writings, as to leave no doubt that the money in question was embraced. And in such a case extrinsic evidence is admissible as to the intention of the parties, and what was their intention then becomes a question for the jury. (*Petit* v. *Shepherd,* 32 N. Y. 79, and cases cited.)

III. It was necessary for the plaintiff to show that the money in question had become the money of Whaples & Roach, but as the articles are silent as to what the capital of the firm should be, or at all events, as they do not show that the money in question should be transferred to the firm, it was competent for the defendant to show what was in fact the property of the firm, and for that purpose the conversa-tion between Whaples and Roach should have been received, and the court erred in excluding the evidence.

*J. C. Cochrane,* for the respondent.

I. The written instrument executed by Mattison and Whaples, is clear, plain, and unambiguous.

By it, all the copartnership property was sold, and was designed to be sold, to Whaples. And, although the parties did not know, at the time, of a particular item of property, it would pass by the assignment. (*Couch* v. *Delaplaine*, 2 Comst. 397.)

The evidence offered by the defendant tended directly to contradict the language and legal effect of the writing.

II. Conceding this, the defendant claims that the evidence was admissible for the purpose of showing a mistake.

Mistakes are of four classes:

1. A mistake in the form of a contract, by reason of which the real agreement between the parties is not expressed.

2. A mistake in regard to the effect of the contract.

3. A mistake in regard to the consideration of the contract, or the facts upon which it is based, the parties acting upon an assumed state of facts which did not exist.

4. A mistake in regard to the subject of the contract, or the matters upon which it operates.

There can be no pretense here that there was any mistake embraced in the first class. The written contract expresses exactly what the parties agreed upon. Mattison intended that Whaples should take his place in the firm, with all his rights and liabilities. It was not understood that any thing should be reserved.

If there was a mistake of the second class, that was a mistake of law.

If there was a mistake in regard to the matters embraced in the other classes, no one but a party or privy to the contract can ask relief, and that must be done in the proper action. The most that can be claimed is, that if the fact had been known, peradventure, the contract might not have been made. But, notwithstanding the mistake, the party may prefer to allow the contract to stand. A mistake is in the nature of a fraud which the party may take advantage of or not, at his option. In this case the parties are content that the contract should remain. Strangers to the contract claim that the parties labored under a mistake in making it. If strangers, even in a common law action, can upset a contract which the

parties have taken no steps to disturb, no man can tell whether he has an existing contract or not, and the question in all cases will be, not what the contract was, but what, in the opinion of others, it ought to have been.

III. There was no mistake here for which any party could claim relief. The subject of the contract was the one-half of a copartnership business, the purchaser taking the one-half of all the stock and property, and assuming one-half of all the liabilities. The interest sold was estimated at $1,600, and may have embraced property to the amount of $20,000. The firm then had an account with the Union Bank, but neither of the parties took the trouble to ascertain how it stood. There was in fact a balance owing the firm of $165, one-half of which passed by the assignment.

This, we submit, was no mistake. It was one of the risks always contemplated in contracts of this description, and necessarily incident to the contract. The party bought all debts and assumed all liabilities. If some particular debt happened to be less and another more than the parties supposed, it would not, in the absence of fraud, affect the agreement. If there had been a balance owing to the bank, Whaples would have been liable for it. (Story's Eq. Jur. § 138 h.)

In order to entitle a party to relief the mistake must be of a material and fundamental character, and not a mere mistake in regard to some detail which would not have prevented the contract if known. (Id. §§ 138, i. 141.)

And the fact must have been such that it would not have been ascertained with reasonable diligence. In this case it was only necessary to look at the bank book in the party's own possession. (Id. §§ 146, 150, 151.)

IV. This is not a case where any party can treat the contract as a nullity. If one party claims relief he must act promptly, and the other party must be put in *statu quo.*

It would be an alarming doctrine if a party, after making a written bill of sale, on a good consideration, of all his property of a certain description, could go and carry off all such as he did not recollect, or claimed that he did not recollect,

at the time. Thus the title would in all cases depend, not upon the plain terms of the written agreement, but upon recollection. Mr. Whaples bought half of all the copartnership property, or nothing. He has a right to that, or a right to be released from the whole contract. He has a right to show that the liabilities assumed by him were much more than was supposed at the time. If one party has the right to take property not recollected, the other party must have the right to be released from the payment of debts not recollected. If the contract is to changed at all, the whole case, and all the parties must be before the court. Otherwise the parties cannot be put back in their former position. (Story's Eq. Jur. § 138, i.)

V. This is a collateral action at law. Neither of the parties to the contract is a party to it. No mistake is set up in the answer, or relief demanded. The contract is evidence of the title of the plaintiff, but the consideration or motives of the parties to it, or the question whether they acted ignorantly or mistakenly in making the contract, is entirely immaterial in this action.

VI. Parol evidence of the contents of the inventory and of the intent of Mattison, was properly excluded, and there was no question to submit to the jury.

HUNT, Ch. J. The first question that arises upon the motion for the nonsuit is, whether the transfer from Mattison to Whaples covered the demand in question. The transfer conveyed the one undivided half of all the property or valuable things of the firm of Roach & Mattison of any name and kind. By the same instrument Whaples undertook to pay the one-half of all the debts of the said firm. An inventory was made, which, it was supposed, contained a statement in substance both of the assets and the debts of the firm. There was, however, no covenant or restriction which limited the effect of the agreement to the securities, or the debts specified in the statement. The sale was of the entire interest in the partnership property. The purchaser was to receive the one undivided half of the firm property,

whether more or less, as he was to pay the one-half of its debts, whether they should prove to be larger or smaller than was supposed. If an additional debt against the firm had been presented, it would have been the duty of Whaples to have assumed the place of Mattison with reference to it. So I cannot doubt that the credit in question, although unknown both to Mattison and Whaples, passed under the transfer described. (*Couch* v. *Delaplaine*, 2 Comst. 397.) The contract was clear and unambiguous. No parol evidence of the intention of the parties was competent to enlarge or restrict its meaning. (Story on Cont. § 235.) Nor does the question of fraud or mistake arise. Both the buyer and the seller are content with the transaction, so far as the case shows, and it is not in the power of strangers to require its rescission or its alteration. (Story Eq. Jur. § 138, 141.) There was nothing to submit to the jury on this point. It was properly ruled as a question of law.

The defendant further insists that Whaples never transferred this credit to the new firm of Whaples & Roach, and that therefore the same never passed under their assignment to the plaintiff. The latter assignment was of partnership property simply, and if the claim in question had not been made over to the new firm, it certainly would not pass under such an assignment. On this subject Whaples testified that after receiving the transfer from Mattison, he immediately entered into copartnership with Mr. Roach, and says, "I put into the business the property I received from Mattison." This evidence was given without objection, and is quite consistent with the written agreement between Roach and Whaples. A transfer of "the property received from Mattison," means a transfer of the whole of such property, and includes all that in fact or in law passed under the assignment of Mattison. In his printed argument, the appellant insists that he was at least entitled to have this question submitted to the jury. This is an after thought. The course of the trial and the opinion of the court below give strong reason to believe that the contest on the trial was confined to the effect of the transfer from Mattison, and that

it was virtually conceded that the credit in question passed under the partnership assignment, if it was the property of Whaples. The defendant desired a submission to the jury of the question whether it was the intention of Mattison and Whaples that this credit should pass under the sale by the former to the latter, but he made no such request as to the effect of joint assignment by Whaples & Roach. There is no reference to this question, even as a proposition of law, except upon a liberal construction of the request for a nonsuit on the ground "that the money or credit in controversy did not pass to Whaples or to the plaintiff." If it did not pass to Whaples, it, of course, never could have reached the plaintiff, who claimed through him, and this language would be satisfied by limiting the objection to the Whaples title alone. Admitting it, however, to have been intended to embrace an allegation that this money or credit was not included in the transfer by Whaples & Roach, as partners, to the plaintiff, the case is not aided. There was clear and undisputed evidence that it was so embraced, and the defendant simply asked a ruling upon the question as one of law, and did not ask that it should be submitted to the jury.

The principles laid down show that the rulings at the trial were correctly made.

The judgment should be affirmed with costs.

MILLER, J. The bill of sale executed by Mattison to Whaples, conveyed and transferred to the latter all the interest of Mattison in the partnership property and effects, being the undivided half of all the property and things in action enumerated in the instrument, and "all other property and valuable thing or things belonging to said firm, of every kind and nature." This language is broad and comprehensive, and clearly embraced the entire interest of Mattison in the copartnership property. It did not limit the effect of the bill of sale, because the parties did not know that there was a balance of the price on deposit with the defendant. It would pass by the assignment the same as if this particular item had been known by the parties, and such was clearly their inten-

tion. It is not to be assumed that in case of a transfer of property, in which the instrument shows a clear and plain intention to embrace every thing owned by the party, that an exception is to be made in favor of any particular kind or species of property. If such were the rule it would not be difficult in many cases to vary and contradict the express terms of a written instrument in violation of the principle so long and so well established, that parol evidence cannot be introduced to contradict a writing. When such a design is in contemplation it is the plain duty of the parties to express it in the writing, and in case of a failure to do so, to abide by the consequences of their neglect.

The fact that an inventory was taken of the property, does not, by any means, alter the effect and meaning of the written contract of the parties. Upon sales of this description it is not uncommon to make an inventory of the property intended to be sold, and it is usual for the parties to embrace every article of property known to them; but unless the contract expressly provided that the inventory is to control, it cannot be so construed, as it is to be supposed if such was the design that the bill of sale would have contained phraseology which limited the sale to the inventory. Such is not the case here, but language of the most general character is employed, so as to comprehend all kind and species of property, without any regard whatever to that which is enumerated in the inventory.

At the time when the bill of sale was made, an inventory of all accounts and bills payable, due from, or owing by this firm, was also made out, which is not referred to in the contract, which provides that Whaples shall pay one-half of all debts and liabilities, and indemnify and save harmless the party of the first part thereupon. If a debt had been left out of the inventory, could it be claimed that Whaples was not liable for this debt? I think not. And for the same reason it cannot now be urged as a defense, that the claim in question did not pass by the bill of sale.

It is evident that in the transaction between the parties, it was contemplated that the purchaser should occupy precisely

the same position as the seller had occupied, and that the former should be entitled to all the benefits and advantages arising from the sale, and be liable for all the debts incurred, without regard to the possible contingency of the one or the other exceeding the inventory which had been made of each.

Upon the facts presented in this case there was no question of fact whether or not it was the intention of the parties to confer title to the money. That intention was entirely apparent from the bill of sale itself, and even if the inventory had been introduced it would not contradict the plain import of that instrument. Nor was it competent, in my opinion, to introduce evidence of conversation had between the parties, to show what in fact was the property of the firm of Whaples & Roach. The instrument showed what was actually transferred, and the law fixed what property belonged to the firm. The evidence offered would have been parol testimony to contradict a writing, and was, therefore, not admissible.

There was no error upon the trial, and the judgment must be affirmed.

Judgment affirmed.